IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**DEARNTA LAVON THOMAS,**

**Petitioner,**

v.  CRIMINAL NO. 2:11-CR-58

**UNITED STATES OF AMERICA,**

**Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner Dearnta Lavon Thomas's ("Petitioner") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to Title 28, United States Code, § 2255 ("Motion to Vacate"). For the reasons set forth below, Petitioner's Motion to Vacate is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

On April 8, 2011, Petitioner was named in a fifty-nine-count indictment filed in the Eastern District of Virginia, Norfolk Division. ECF No. 3. On June 27, 2011, Petitioner pled guilty to Counts 1 and 4 of the indictment. ECF No. 144. Count 1 charged Petitioner with Racketeer Influenced and Corrupt Organizations ("RICO"), in violation of 18 U.S.C. § 1962(c). *Id.* Count 4 charged Petitioner with Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.*

According to the Presentence Investigation Report, Petitioner was a founding member and "three-star general" of the Bounty Hunter Bloods gang and an associate of the Nine Tech Gangsters since in or around 2003. ECF No. 416 at 9-19. As part of Petitioner's RICO offenses, Petitioner distributed "crack" cocaine and heroin while in possession of a firearm; was a getaway driver for a business robbery; possessed a firearm during a robbery of five drug associates; shot at two

1

vehicles at a party; shot at a rival gang member on one occasion and was with fellow gang members on another occasion when they shot at the rival gang member; convinced two individuals to give him and other gang members the address of a drug dealer so they could rob him/her; and directed other gang members to rob a juvenile while he waited in the getaway vehicle. *Id.*

On December 13, 2011, Petitioner was sentenced to 60 months imprisonment for Count 1 and 120-months imprisonment for Count 4, for a total of 180 months, all to be served consecutively. ECF No. 377.

Previously, on other grounds, Petitioner filed a § 2255 motion to vacate on April 30, 2018. ECF No. 590. That motion was denied as untimely on August 21, 2018. ECF No. 595. Petitioner, *pro se*, filed the instant motion pursuant to 28 U.S.C. § 2255 on March 18, 2021. ECF No. 678. Petitioner contends that his offense of conviction cannot qualify as a crime of violence under 18 U.S.C. § 924(c)(3) after the United States Supreme Court's ("Supreme Court") ruling in *United States v. Davis*, 139 S. Ct. 2319 (2019). *Id.* Petitioner, through counsel, supplemented his Motion to Vacate on April 22, 2021. ECF No. 688. The Government filed its Response in Opposition on May 25, 2021. ECF No. 696. Petitioner filed its Reply on June 4, 2021. ECF No. 702. After reviewing the parties' filings, the Court finds that a hearing on this matter is not necessary. Accordingly, the matter is ripe for disposition.

## II. LEGAL STANDARDS

### A. Title 28 U.S.C. § 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.

2

§ 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999). However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains;" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An individual may also seek relief under § 2255 within one year of the date on which a right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review. *See* 28 U.S.C. § 2255(f)(3). In other words, if the Supreme Court issues a ruling that may retroactively impact the validity of an individual's sentence, that individual may file a § 2255 motion to assess the substance of his or her claims.

3

### B. Crimes of Violence Under 18 U.S.C. § 924(c)(1)

Section 924(c)(1)(A) provides that a person who uses or carries a firearm "during and in relation to any crime of violence or drug trafficking crime" or who "possesses a firearm... in furtherance of any such crime" may be convicted of both the underlying crime(s) *and* the additional, distinct crime of utilizing a firearm in connection with a "crime of violence or drug trafficking crime." Specific to the facts of this case, Petitioner's § 924(c) conviction requires that Petitioner committed a "crime of violence" as opposed to a "drug trafficking crime."

Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony" and

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Courts commonly refer to § 924(c)(3)(A) as the "force clause" and to § 924(c)(3)(B) as the "residual clause." In *United States v. Davis*, the Supreme Court held that the "residual clause" of § 924(c)(3)(B) was unconstitutionally vague, thereby invalidating its enforceability.[1] Accordingly, any conviction under the "crime of violence" framework must satisfy the force clause to avoid vacatur.

As stated above, the force clause requires that the underlying felony offense have as an element of that offense, "use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 924(c)(3)(A). Since the force clause requires an examination of the elements of an underlying offense, courts must engage in statutory interpretation to resolve a *Davis* inquiry. *See Davis*, 139 S. Ct. at 2327.

---

[1] *See also Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (holding a similar residual clause defining crimes of violence in 18 U.S.C. § 16(b) to be unconstitutionally vague); *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding another residual clause defining crimes of violence in 18 U.S.C. § 924(e)(2)(B) to be unconstitutionally vague).

## C. Methods of Statutory Interpretation

In determining whether an offense is a "crime of violence," courts employ either the categorical approach or the modified categorical approach. *See United States v. Mathis*, 932 F.3d 242, 263-64 (4th Cir. 2019). Under the categorical approach, courts will "consider only the crime as defined, not the particular facts in the case." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir.), cert. denied, 140 S. Ct. 304 (2019). Stated another way, courts "focus[] solely on the elements of the offense of conviction, comparing those to the commonly understood elements of the generic offense identified in the federal statute." *United States v. Price*, 777 F.3d 700, 704 (4th Cir. 2015). For state offenses, such crimes are a "categorical match" to the federal offense only if "the elements comprising the statute of conviction [are] the same as, or narrower than, those of the generic offense." *Id.* When required, courts use the categorical approach to determine whether a state offense is comparable to "generic" federal offenses as described in a particular statute. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (employing the categorical approach to compare a state law to federal immigration laws).

"[I]n cases involving statutes that set out elements in the alternative and thus create multiple versions of the crime, [courts] consider the statute divisible and apply the modified categorical approach." *United States v. Diaz*, 865 F.3d 168, 2017 WL 3159918, at *4 (4th Cir. 2017) (internal quotation marks omitted). "[T]he modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." *Mathis*, 136 S. Ct. at 2253. In carrying out the modified categorical approach, courts may examine a limited class of documents, including indictments and jury instructions, to determine which part of the statute the defendant violated. *Descamps v. United States*, 570 U.S. 254, 257 (2013). Both the modified version and the strict categorical approach, as

5

applied to § 924(c)(3)(A), would assess whether the statutory elements of the predicate crime require the force clause elements of "use, attempted use, or threatened use of physical force."

**D. VICAR – 18 U.S.C. § 1959**

Title 18 U.S.C. § 1959 imposes criminal penalties for committing "violent crimes in aid of racketeering activity," i.e. VICAR. In general, "[t]he VICAR statute defines prohibited conduct by reference to enumerated federal offenses, but also requires that the conduct be 'in violation of the laws of any State or the United States.'" *United States v. Keene*, 955 F.3d 391, 393 (4th Cir. Apr. 9, 2020) (quoting 18 U.S.C. § 1959(a)). In other words, a VICAR conviction is premised upon the defendant's other federal and state criminal conduct. Here, the underlying statutory offense for Petitioner's § 924(c) conviction is 18 U.S.C. § 1959(a)(3), which specifically identifies "assault with a dangerous weapon or assault resulting in serious bodily injury" as the generic federal offenses for conviction.

### III. DISCUSSION

Petitioner relies upon *United States v. Davis*, arguing that because the residual clause of § 924(c)(3)(B) is unconstitutionally vague and because Petitioner's VICAR conviction is not a "crime of violence" under § 924(c)(3)(A)'s force clause, Petitioner's § 924(c) conviction should be vacated. *See* ECF Nos. 688 and 702. For the reasons stated below, however, Petitioner's contention is without merit.

**A.     Petitioner's successive § 2255 motion is timely.**

As a preliminary matter, the Court finds Petitioner's motion timely. On April 30, 2018, Petitioner previously filed a § 2255 motion based upon similar § 924(c) challenges to his conviction under *United States v. Dimaya*. ECF No. 590. The Court denied Petitioner's motion as untimely, holding "the right that Petitioner seeks to invoke was not [initially] recognized in

*Dimaya*. Rather, it was recognized in *Johnson* and applied in *Dimaya*." ECF No. 595. Accordingly, Petitioner had one year from *Johnson* to raise *Johnson*-related challenges to his § 924(c) conviction and failed to do so.

The newly recognized right addressed in Petitioner's present Motion to Vacate, however, stems from *United States v. Davis*. Because of the new, retroactive rights established in *Davis*, the parties agree that Petitioner's prior § 2255 motion has no impact on the justiciability of the present Motion to Vacate. *See* ECF Nos. 688 and 696 at 6-7. Moreover, the parties further agree that the factual circumstances of Petitioner's § 924(c) conviction permit him to seek relief pursuant to *Davis*. *Id*. The parties merely disagree as to whether such relief is warranted given the facts particular to Petitioner's conviction. Therefore, the Court finds Petitioner's Motion to Vacate timely and will address the merits of his claims.

**B.     The Parties disagree as to the applicable predicate offense for Petitioner's § 924(c) conviction.**

Petitioner's § 924(c) conviction is premised upon Count 3 of the Indictment. Count 3 charged Petitioner with VICAR assault with a dangerous weapon, in violation of 18 U.S.C. § 1959(a)(3). Although Petitioner was not convicted of Count 3, the offense was incorporated by reference in Count 4 (the § 924(c) count) and serves as the basis of that conviction. *See* Indictment, ECF No. 3. A VICAR offense is predicated upon violations of ascertained generic federal laws or "the laws of any State or the United States." 18 U.S.C. § 1959(a). Here, the predicate offenses for Count 3, as described in the Indictment, are violations of Virginia Code § 18.2-53.1 and 18.2-282. ECF No. 3 at 25. Additionally, the Indictment specifically identifies Count 3 as a violation of "Title 18, United States Code, Sections 1959(a)(3) and 2." Accordingly, to properly adjudicate Petitioner's Motion, the Court must conduct a series of statutory analysis since both § 924(c) and

§ 1959(a) require predicate offenses. To better demonstrate the relationship between these statutes, the Court makes the following illustration:



Accordingly, § 924(c)(1)(A) requires a predicate crime of violence and § 1959(a)(3) requires a predicate crime of assault with a dangerous weapon in violation of state or federal laws. Here, Petitioner argues that the Court need only look to the Virginia statutes to conduct its "crime of violence" analysis. *See* ECF Nos. 688 and 702. On the other hand, the Government argues that the Court need only conduct its analysis based upon the generic, federal assault with a dangerous weapon charge. *See* ECF No. 696. To resolve this point of contention, the Court must engage in statutory interpretation of both § 924(c)(1)(A) and § 1959(a)(3). In so doing, the Court must assess the correct method of statutory interpretation—either the categorical approach or its modified version.

C.  **The modified categorical approach is the correct method to examine Petitioner's VICAR offense.**

Upon review of the filings, the parties do not assess which approach is required by the VICAR statute. Instead, both parties generally reference the categorical approach and dive into their analyses of the underlying elements supporting (or not supporting) § 924(c)'s "crime of violence" requirement. But in order to establish a sufficient foundation for the Court's legal analysis, the Court must ascertain which approach it will use.

Courts within the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") have routinely applied the modified categorical approach when evaluating similar VICAR offenses under a § 2255 Motion.[2] In practice, the modified categorical approach only slightly differs from the categorical approach in that the Court may rely upon "a finite class of extra-statutory materials 'to determine which statutory phrase was the basis for the conviction.'" *Montes-Flores*, 736 F.3d 357 at 365 (quoting *Johnson v. United States*, 559 U.S. 133, 144 (2010)). These "extra-statutory materials" include "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

The modified categorical approach is applicable when a statute describes elements in the alternative, thereby creating divisible criminal conduct within the statute. *See Diaz*, 2017 WL 3159918, at *4. Here, the VICAR statute describes multiple predicate offenses, any one of which could serve as the basis for a VICAR conviction. While "assault with a dangerous weapon" under § 1959(a)(3) is Petitioner's offense of conviction, the statute also contemplates murder (§

---

[2] *See Cousins v. United States*, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016); *see also United States v. Jones*, 2017 U.S. Dist. LEXIS 139727 (W.D. Va. Aug. 28, 2017).

9

1959(a)(1)), maiming (§ 1959(a)(2)), and other criminal conduct (*see* § 1959(a)(4)-(a)(6)), each with varied elements. Therefore, the modified categorical approach is applicable, allowing the Court to rely upon the indictment and various plea documents—not just statutory language—to ascertain the elements of Petitioner's offense.

**D.**  ***United States v. Keene* provides guidance but is not controlling on a § 2255 Motion.**

In examining a nearly identical VICAR assault with a dangerous weapon charge, the Fourth Circuit invalidated a district court's use of the categorical or modified categorical approaches to interpret the VICAR statute. *Keene*, 955 F.3d at 391. The *Keene* Court reasoned that "nothing in the statutory language at issue suggests that Congress intended an element-by-element comparison of the enumerated federal offense with the specified state offense." *Id.* at 393 The *Keene* Court ultimately concluded that "[i]nstead, the statutory language at issue requires only that a defendant's *conduct*, presently before the court, constitute one of the enumerated federal offenses as well as the charged state crime." *Id.* (emphasis in original).

In *Keene*, the Fourth Circuit reviewed an interlocutory appeal after the district court dismissed counts 4, 8 and 14 of the indictment. *Keene*, 955 F.3d at 393. Counts 4, 8, and 14 charged those defendants with VICAR brandishing, in violation of the Virginia brandishing statute—Virginia Code § 18.2-282. *Id.* "Applying the categorical approach, the district court concluded that the crime of Virginia brandishing is broader than the offense of assault with a dangerous weapon under VICAR, because the federal assault crime requires as an element an intent or threat to inflict injury while Virginia brandishing does not." *Id.* Accordingly, the district court dismissed the claim.

On appeal, the *Keene* Court further evaluated the text of § 1959(a), specifically addressing the following language therein: "[w]hoever... assaults with a dangerous weapon... in violation of the laws of any state or the United States... shall be punished...". *Keene*, 955 F.3d at 397 (quoting

18 U.S.C. § 1959). The Court concluded "[n]othing in this language suggests that the categorical approach should be used to compare the enumerated federal offense of assault with a dangerous weapon with the state offense of Virginia brandishing." *Id.* Instead, "before convicting a defendant, a jury must find that he engaged in the conduct alleged in the indictment, namely, assaulting the named victim with a dangerous weapon in violation of the Virginia brandishing statute." *Id.* at 399.

*Keene* is not applicable here for two reasons. First, the *Keene* Court narrowed its holding to only the clauses of § 1959(a) applicable to those defendants in that case. *Id.* at 397 (stating "we focus on the specific language of VICAR under which the defendants were charged"). Upon review of the *Keene* indictment, although the VICAR counts at issue are nearly identical to that of Petitioner, the Fourth Circuit references § 1959(a)(3) but limits its statutory interpretation to § 1959(a) only.[3] *See id.*; see also Indictment, *United States v. Keene*, No. 4:18-cr-12 (W.D. Va. Jun. 11, 2018) (ECF No. 5 at 11). Accordingly, the *Keene* Court provided no analysis of the statutory interpretation methods applicable to § 1959(a)(3).

Second, *Keene* is not applicable because it evaluates statutory interpretation of § 1959(a) alone, with no added layer of a § 924(c)(1)(A) analysis. It is still the case that under a § 924(c)(3) analysis, "the court may (depending on the features of the applicable statute) employ the categorical approach or the modified categorical approach." *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015) (internal quotation marks omitted). Here, any analysis of the force clause necessarily requires an in-depth review of the elements of the predicate offense. *See* § 924(c)(3)(A) (where the term "crime of violence" requires that a felony "has as an element the use, attempted

---

[3] There, Count 4 charged those defendants with assault with a dangerous weapon in violation of Virginia Code § 18.2-282 and 18.2-18, and in further violation of 18 U.S.C. §§ 2 and 1959(a)(3). These charges are substantially similar to that of Petitioner with the only difference being the subchapters of one of the applicable Virginia statutes—here, Virginia Code § 18.2-53.1 instead of 18.2-18. *See* ECF No. 3.

use, or threatened use of physical force against the person or property of another"). Therefore, it is the opinion of this Court that *Keene's* method of statutory interpretation—looking to a defendant's conduct rather than the statutes' elements—is inapplicable to the Court's interpretation of § 1959(a)(3) as a predicate offense to § 924(c)(1)(A). The Court now returns to its modified categorical review of § 1959(a)(3) as applied to Petitioner.

**E.     The elements of § 1959(a)(3) do not require a showing that Petitioner's underlying Virginia violations are crimes of violence.**

The elements of VICAR assault with a dangerous weapon are as follows: (1) the organization is a RICO enterprise; (2) the enterprise was engaged in racketeering activity as defined in RICO; (3) the defendant had a position in that enterprise; (4) the defendant committed the alleged crime of violence in violation of federal or state law; and (5) the defendant's general purpose in doing so was to maintain or increase position in the enterprise. *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994). At issue here is element four and the alleged crime of violence is § 1959(a)(3). While Petitioner's indictment includes violations of Virginia Code § 18.2-282 and 18.2-53.1 within the § 1959(a)(3) charge, it is the view of this Court that the Virginia state violations are not the crimes that require proof of crimes of violence. Instead, the predicate offense is merely § 1959(a)(3) alone.

While *Keene* is not determinative of the outcome in this case, the *Keene* Court does provide guidance on how the Court should treat § 1959. In its analysis, the *Keene* Court reasoned that "the VICAR statute includes no language suggesting that all violations of a state law also must qualify as the enumerated federal offense." *Keene*, 955 F.3d at 397. Accordingly, to be convicted of a § 1959 offense, the elements of an underlying state offense need not mirror that of a federal offense. It follows that if an individual can be convicted of a § 1959 offense without the government having to compare the state statute to the federal offense, then the Court's crime of violence analysis

similarly does not require that both the generic federal offense and the state offenses have as an element the "use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Instead, the Court may, as it has done in the past, merely rely upon the generic federal offense. *See Cousins*, 198 F. Supp. 3d at 626 ("Section 1959 reaches the generic conduct described therein, without concern for the labels a state may use in criminalizing the conduct that qualifies as a VICAR predicate.") (citing *United States v. Le*, 316 F. Supp. 2d 355, 362 (E.D. Va. 2004)); *see also Jones*, 2017 U.S. Dist. LEXIS 139727 at *12 ("The court concludes that the generic definition of assault with a dangerous weapon applies in examining whether the VICAR counts in the Superseding Indictment qualify as crimes of violence under § 924(c)."). Therefore, the Court will only look to the generic federal offense of "assault with a dangerous weapon" during its crime of violence analysis.

F. **The generic federal offense of "assault with a dangerous weapon" constitutes a crime of violence.**

The Government argues that VICAR assault with a dangerous weapon is a "generic" federal offense which, by its very nature, requires "use, attempted use, or threatened use of physical force against the person or property of another." ECF No. 696 at 11-17. The Government relies upon the common law definition of assault—coupled with the added dangerous weapon—to make this assertion. On the other hand, Petitioner argues that the common law definition of assault, as applied to VICAR assault with a dangerous weapon, is not a crime of violence because: 1) it can be completed by recklessness, 2) it can be accomplished by acts not requiring violent force or physical force, and 3) it impermissibly includes mere possession of a dangerous weapon rather than use.

"[C]ourts have uniformly recognized that various federal statutes criminalizing assault incorporate the long-established common law definition of that term." *United States v. Passaro*,

13

577 F.3d 207, 217-18 (4th Cir. 2009) (internal quotation marks omitted). "In its traditional common law usage, the term assault encompasses two types of actions. It can refer either to an unsuccessful attempted battery or to a threatening act which places another person in reasonable apprehension of an imminent physical harm." *United States v. Barbeito*, No. 2:09-cr-00222, 2010 U.S. Dist. LEXIS 55688 at *81-82 (S.D.W. Va. June 3, 2010). Therefore, common law assault with a dangerous weapon "requires a physical act, utilizing a dangerous weapon, that signifies to the victim that the aggressor has the present ability to cause the threatened harm with the weapon, and that the weapon may be put to harmful use immediately." *Cousins*, 198 F. Supp. 3d at 626 (citing *Barbeito*, 2010 U.S. Dist. LEXIS 55688 at *84-85). "For a battery-type assault, the weapon would have to make contact with the victim." *Id.*

Upon review, both common law assault with a dangerous weapon and the battery-type of assault with a dangerous weapon clearly require "use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Contrary to Petitioner's contention, mere possession is not included in the common law definition. Moreover, while simple assault may be committed with recklessness or forcible touching[4], inherent in placing another in reasonable apprehension of immediate harm *with a dangerous weapon* is that the offender intended to commit the assault *with violent force*. Therefore, since Petitioner's predicate VICAR conviction qualifies as a crime of violence under the force clause, Petitioner's § 2255 claims pursuant to *United States v. Davis* are without merit.

## IV. CONCLUSION

For the reasons above, Petitioner's Motion is **DENIED**.

---

[4] *See Diaz*, 2017 WL 3159918, at *9 ("[A]ssault need only be a forcible touching, and there is no evidence that it needs to rise to the level of violent force.") (internal quotation marks omitted).

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based on incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
August 9, 2021